Lomax, J
dissented. He said—My opinion is, that this court has no jurisdiction iii the case; the judgment sought to be reversed, not being a judgment convipting the defendant of any crime or misdemeanour. I think the proceedings in the case essentially'civil, not criminal; and if so, they do not fall within our jurisdiction, and any'opinion whatever pronounced by this court upon the merits, must be extrajudicial. 1 Rev. Code, ch. 67. § 26. p. 224.'
I regard the act of assembly of January 1817 concerning James White, as a mere grant, bjr the legislature to him, of a privilege or franchise, to erect a dam across the Holstein, a public highway, upon condition, most plainly and technically expressed, that the grantee should not be entitled to the benefits of the act, unless he should (if tlie court should establish his dam) erect therein a lock or slope sufficient for the passage of fish, boats &c. and should constantly beep the same in such repair, as not to obstruct the navigation of • said river or the passage of fish &c. A nuisance to the public, in respect of navigation, or of riparian proprietors in their rights of fishery, were consequences (certain, indeed) *733 of a breach of the condition, for which, independently of that, act, White might be prosecuted criminally. But I am at a loss to find that criminal prosecutioh, and judgment convicting of a crime or misdemeanour', in the record of these proceedings, ascertaining a forfeiture df privileges upon the breach of the condition on which they were granted by the commonwealth.
Upon common law principles, the effect of this condition, if broken, is wholly to annul the grant, whensoever the commonwealth, as the grantor, shall by its proper remedy, claim the forfeiture. Individuals exact such forfeitures by mete entry; the commonwealth by solemn matter of record; 3 Black. Comm. 259. In such cases, she resumes her rights, her original domain, absolutely, as if no such grants had ever been made. Her claim to her original dominion over her stream,—to her uninterrupted use, for the public, of her highway,—is not the vindictive claim of penalty for crime. There is nothing in the act of assembly referred to, which, in terms, forbids the obstruction of navigation or passage of fish, dr commands the grantee to erect the lock or slope, or to beep the same at all times in repair. The amount of the act is,-—do this, and you shall have an‘d enjoy for private purposes a public stream and highway; if you do not,' you shall have no right to them, and the public right shall be restored as it was originally.
If the grantee of thd commonwealth fail to perform the condition of his grant, the remedy, at comrhon law, whereby the commonwealth should take advantage of the forfeiture, or, in other words, resume her rights over the thing granted, would be by an inquest of office. See 16 Vin. Abr. 81. and 3 Black. Comm. 259. By the act referred 'to, the county court of Washington was substituted by the legislature for the inquisition of office, and constituted the judges of the sufficiency of the lock or slope, with full power, also, at any time, to abate the dam as a nuisance, if, after three months notice to the proprietor thereof, entered of record, the lock or slope should, in its opinion, be insufficient for the passage of fish, boats &c. Whether the breach of the condition and *734 consequent forfeiture to the commonwealth, were found by inquisition or by judgment of the county court, would seem to be wholly immaterial, and to give no color to change a civil proceeding into a criminal, one. Inquests of office, in cases of escheat, it is believed, have always been considered as civil proceedings merely, and the court of appeals has never refused cognizance of them. Can any reasonable distinction be drawn between the character of the jurisdiction exercised in cases of escheat, and exercised in other cases, where, upon any terms, express or implied, the commonwealth claims that her grant of any estate has determined, and that she may resume her dominion over them? Such offices are, in England, returnable into the exchequer and chancery, not into the king’s bench.
That the county court of Washington is empowered to abate the dam as a nuisance, cannot make the proceeding a criminal conviction of White: for how can an act directed to be done in regard to the property forfeited by him, and resumed by the commonwealth, affect him personally, or place him in the condition of one convicted, in a criminal proceeding, of a nuisance?
In looking into the judgment pronounced by the county court, to ascertain the kind of jurisdiction to which it belongs, I have not bestowed much consideration upon the apparent anomaly of a criminal prosecution carried on at the instance and in the name of a private individual against the defendant, without ever naming the commonwealth as a party, and which does not appear to have received the countenance of her counsel in court. In these proceedings, • no fine or imprisonment, one or both of which is the effect of every criminal conviction, has been assessed or imposed. The only point in which this can be supposed to resemble the judgment in a prosecution for a nuisance, is, that it pronounces an abatement of the dam as a nuisance: but even here, there is a difference between the judgment of abatement .pronounced by the county court of Washington under the act of assembly, and that which could regularly be rendered as incidental to conviction in a prosecution before the *735 ordinary criminal tribunals, under the general law. An entire abatement of the dam is the judgment of Washington county court: the usual judgment on an indictment, in addition to fine and imprisonment, would have extended no farther than to command a removal, at the costs of the defendant, of the obstruction to navigation and passage of fisli. Thus, where the nuisance was a house built too high, only so much of it as was too high was adjudged to be pulled down. So, where the indictment was for keeping a dye house, or carrying on any stinking trade, the judgment was, not to pull down the building where the trade was carried on, but to inhibit the offensive trade. So, in the case of a glass house, the judgment was to abate the nuisance, not by pulling the house down, but only by preventing the defendant from using it again as a glass house. 1 Russ, on Crimes 305, 6. In such cases, the defendant is divested of no right, no property is taken from him, no condemnation of the subject itself, but a restraint imposed, so that his use and enjoyment of it may not be injurious to others. But the judgment, in this case, is not confined to a mere abatement of the obstruction, so as to admit navigation and the passage of fish: it sweeps away the whole dam, divesting the defendant of all his rights and reinstating the commonwealth in her original interest in the whole river. The forfeiture inflicted hy this proceeding, goes greatly beyond the abatement commanded by the judgment in an ordinary prosecution.
Looking to it as a civil proceeding concerning the public property, such a result is readily explained ; but looking to it as a criminal prosecution for punishing the offender, according to some prescribed sentence of the law, it is wholly unprecedented. To find any law to suit a result, we must ascribe to the legislature the purpose of making a change in a criminal proceeding, by a mere private act of assembly concerning James While; an act which the judges would not be bound, ex officio, to notice,—making a change in the criminal law, which coidd have no application to a single individual in the commonwealth but White, in regard to *736 his dam across Holstein river; and for that single object, conferring summary and final criminal jurisdiction upon the justices of Washington county. To give such.a construetion to this act of' assembly, seems to me most unreasonable.
The circumstance that the county court of Washington must, in rendering its judgment, have passed upon the very same matter .which .establishes the offence of nuisance, is of no consideration.. For the same may be said.of recoveries on bonds, frequently directed by- law, with condition not to do acts declared to be criminal, and of recoveries of penalties in qui. tam actions, and informations. The jurisdiction which enforces these pecuniary forfeitures collateral to the crimes, has never been confounded with that which prosecutes and punishes the crimes themselves. The distinction between these jurisdictions was alluded to by judge Roane, in .the case of Bedinger v. The Commonwealth, 3 Call 471. where he applies a criterion, to. distinguish from crimir nal cases, the civil cases in which appeals may be taken to the court of appeals*... The latter, he says, are wherever the direct object of the proceedings.is the discussion and decision upon a civil.right, whatever may be the form of the proceeding. For example, some informations may.be included under this, distinction, such as informations in .the nature of qui tam actions for penalties, which (in common with actions of debt) .lie for penalties &c. and, all other kinds of proceeding, whatever-may be their form, the direct object of which is to assert a right of a civil nature, and which are deemed proceedings of a civil nature. The reason why he, as well as all the other judges in that case, disclaimed jurisdiction, was, that in its shape,and .its substance, it was a pror secution directly for crime, and the incapacity, to hold the office then in question, was a part.of the punishment ,preSP.ribed for such an, offence. The distinction alluded to has been maintained by the court of. appeals in several cases since, in all of which that court has manifested the utmost caution not to, invade the criminal jurisdiction. But none of the cases, in which jurisdiction has been disclaimed by that pourt, can furnish any authority for regarding the present *737 case, otherwise, than as one of civil cognizance. The case of the Attorney General v. Broaddus, 6 Munf. 116. was decided to be a criminal prosecution, and therefore not within the jurisdiction of the court of appeals. A judgment declaring the nullity of an incestuous marriage, might, perhaps, under some circumstances, be regarded, so far as it operated merely upon the marriage, as a civil proceeding. But the law which instituted the proceeding, and declared such marriage to be a misdemeanour, directed, that the court should proceed to give judgment, and to declare the nullity of the marriage, “and moreover might punish the parties by fine &c.” The proceedings thus directed, although in the court of chancery, could not be mistaken. Punishment of crime was the direct object of the information, and the nullity of the marriage was one of the penalties. In Dance's case, 5 Munf. 348. the majority of the court declined to lay Dance (the clerk of the court of appeals) under a rule to give bond with security as a clerk, or to express any opinion as to the obligations to do so, imposed by a law which was enacted after his appointment, or to express any opinion as to what might be the consequences to him, should he fail to comply with its requisitions. Had that court laid him under such a rule, a failure on his part to comply with it would not necessarily involve a contempt of the court; because the clerk, with the utmost reverence for its authority, might be unable to give the security required; he might, in the honest, independent maintenance of his rights, also insist, and in that case was insisting, that the law was unconstitutional, as being a violation of his vested rights, which, upon the fundamental law of society, the legislature had no power to disturb. These or similar grounds would be admitted to excuse the clerk, for contumacy to the court in failing to give the required security ; and the rule, so far as the authority of the court was affected, would be useless and nugatory : but so far as such rule might involve the clerk in a disobedience of the law, in a misbehaviour either private or official, the court of appeals could have no cognizance of the offence. It could be tried and punished only in the general court. To enter a rule, *738 would have implied that obedience to that rule was due, and that a disobedience of it was punishable; and the very act of entering such rule, would be declaratory to the general court, which would try the disobedience, of the opinion of the court of appeals, having no cognizance of the misbehaviour, upon a question of deep import as to the authority of the statute. That statute had not injoined upon the courts any agency, by rule or otherwise, to carry the law into effect, and it would seem to be gratuitous in them to interfere for that purpose. These are the grounds upon which it would seem, the court of appeals declined to take any cognizance of a case involving the clerk in a charge of misbehaviour. In a matter of mere discretion, it forbore to institute any proceedings, which would involve it in the responsibility of deciding upon questions of law of grave import, in anticipation of the judgment of that tribunal, which alone could authoritatively decide upon them, in the case that would arise out of the proceedings it would be instituting. That case, therefore, decided nothing touching the present matter. In the case of The Commonwealth v. Scott, 4 Rand. 143. the court of appeals dismissed the appeal, upon the ground that 'the information filed in the chancery court, on behalf of the commonwealth, under the 2nd section of the statute to prevent the circulation of notes emitted by unchartered banks (declaring that the capital stock of the company, unlawfully issuing those notes, should be held in trust for the benefit of the commonwealth) was a criminal proceeding, over which that court had no appellate jurisdiction. A proceeding in chancery, claiming, by way of trust for the commonwealth, the forfeiture of the property of the defendants, in consequence of a breach of a penal law, and directly as a punishment thereof, was not distinguishable from a criminal prosecution in any other shape. What shadow of pretension was there to legitimate the claim of the commonwealth to private property in the absolute possession and enjoyment of its owners, unless it were forfeited for crime? and what other purpose could there have been for the information, directed by the statute, but to prove the crime, that *739 entitled the state to the forfeiture ? The claim of the commonwealth rested upon the criminality of the conduct of the company, and the information was the proceeding whereby their guilt was to be established. No definition can be given of criminal jurisdiction, if that case was not clearly embraced within it.
Wide is the difference between those cases, and one in which the commonwealth seeks to resume her domain, from which, in the events which have been proved, she had never parted ; property which she had never absolutely alienated. The defendant is divested of his qualified rights, not because he is an offender, but by virtue of his contract by which ho acquired them, and tire condition upon which-he held them. He would equally have been divested, whether the reservation to the commonwealth was in the shape of a condition against the commission of a nuisance, or in the shape of a condition to erect a lock or slope of any described character, or of a condition for the payment of money, or the doing or not doing any other act, the most remote from criminal liability.
For these reasons, I cannot regard this proceeding in the county court of Washington, otherwise than as a mere inquest of office, or a substitute for the same; the recorded violation of the condition upon which the grant had been made by the commonwealth, which record was necessary, upon common law principles, to reinvest her with her dominion in a subject granted upon condition, with the same effect as an entry for condition broken, made by the grantor or his heirs, in the case of a private conveyance. It has, to my view, no feature of a prosecution or sentence for crime, and therefore does not fall within the jurisdiction of this court-
Orders of both courts reversed.